UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CURTYJAH LOVING, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION - LAW |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| AIDAN McINTYRE and | : | |
| PITTSTON TOWNSHIP, | : | No. |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Curtyjah Loving, by and through her attorneys, Barry H. Dyller, Esq. and Dyller & Solomon, LLC, for her Complaint alleges as follows:

## JURISDICTION AND VENUE

1. This action arises out of violations of 42 U.S.C. § 1983, *et seq* and the common law, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., and the Rehabilitation Act, 29 U.S.C. § 701, *et seq*.

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367, 42 U.S.C. § 12133, and 42 U.S.C. § 794(a)(2) incorporating 42 U.S.C. §2000e-5.  Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or

omissions giving rise to the claim occurred in this judicial district, and upon information and belief the defendant resides in this district.

## THE PARTIES

3. Plaintiff Curtyjah Loving ("Ms. Loving"), is, and at all times relevant hereto was, a resident of Wilkes-Barre, Luzerne County, Pennsylvania.

4. Defendant Aidan McIntyre ("McIntyre") is an officer in the Pittston Township Police Department.

5.  Defendant Pittston Township (the "Township") is a municipality in Luzerne County, Pennsylvania, which operates the Pittston Township Police Department and employs McIntyre.

6. Upon information and belief, McIntyre is a resident of Luzerne County, Pennsylvania.

## FACTUAL HISTORY

7. On May 9, 2022, at approximately 2:12 a.m., Ms. Loving was driving home after dropping off a friend.

### Information From a Criminal Complaint and Affidavit of Probable Cause

8.  As discussed further below, at the end of the May 9, 2022 encounter, McIntyre charged Ms. Loving with crimes and vehicle violations,

and put forth his version of facts in a Criminal Complaint and Affidavit of Probable Cause.

9.  According to McIntyre, he observed the car in which Ms. Loving was the driver and decided to do PennDot records check.

10.  Again, according to McIntyre, the records check showed that the registration had an active suspension on it for an insurance cancellation.

11.  McIntyre made a vehicle stop, and told Ms. Loving that he stopped her because of the suspended registration and lack of insurance.

12.  According to McIntyre, Ms. Loving could not show proof of insurance.

13.  According to McIntyre, Ms. Loving began arguing with him about the registration and insurance, so he called for back up from Pittston City and West Pittston.

14.  McIntyre called for a tow truck to tow the car because, he said, it was unregistered and uninsured.

15.  According to McIntyre, Ms. Loving became increasingly annoyed and paced back and forth, including on the roadway.

16.  On August 19, 2022, over three months later, McIntyre charged Ms. Loving with Disorderly Conduct, 18 Pa.C.S.A. § 5503(a)(4), charged as a Misdemeanor of the Third Degree; Operating a Vehicle Without Required

3

Financial Responsibility, 75 Pa.C.S.A. § 1786(f); and Operation Following Suspension of Registration, 75 Pa.C.S.A. § 1371(a).

17.  On September 27, 2022, McIntyre filed a new Criminal Complaint and Affidavit of Probable Cause, which included all of the charges listed above, plus the additional charge of Obstructing Highways and Other Public Passages, 18 Pa.C.S.A. § 5507(a), charged as a Misdemeanor of the Third Degree.

18. On February 9, 2023, upon motion of the District Attorney of Luzerne County, all charges against Ms. Loving were dismissed or *nolle prossed*.

Material Omissions From the Affidavit of Probable Cause

19.  When she was told that she was stopped because the car was not registered or insured, Ms. Loving stated that the car was in fact registered and insured.

20.  Ms. Loving told McIntyre that she would show him the registration and proof of insurance.

21.  McIntyre would not let Ms. Loving show him proof of registration or insurance because, he stated, since she was not the owner of the car, the owner (Ms. Loving's friend) would have to come to where they were to show the registration and proof of insurance.

22.  Ms. Loving called the owner of the car, and had him tell McIntyre that either he or Ms. Loving had permission to go into the glove compartment to get the poof of registration and insurance.

23.  McIntyre would not let Ms. Loving, nor would he himself, go into the glove compartment to retrieve proof of registration and insurance.

24.  Instead, McIntyre insisted that the owner would have to come to the scene and show them proof of registration and insurance.

25.  Because he could not come to the scene, the owner sent to Ms. Loving's phone a photo from PennDot proving that the registration was valid.

26.  McIntyre still insisted that the owner come and physically show him proof of registration and insurance.

27.  Had McIntyre included these facts in his Affidavit of Probable Cause, it would have become apparent that there was no probable cause for the stop or continued detention.

Further Material Omissions from the Affidavits of Probable Cause

28.  As it became increasingly clear to Ms. Loving that McIntyre was more interested in towing the car than in actually learning that the car was in fact registered and insured, Ms. Loving began having a panic attack.

29.  Ms. Loving told McIntyre and other officers who had now arrived at the scene, that she has Bi-polar 1, anxiety and depression.[1]

30.  As a result of her disabilities and McIntyre's disinterest in learning that the car was in fact registered and insured, Ms. Loving began pacing.

31.  Instead of accommodating Ms. Loving's disabilities by, for example, looking in the glove compartment or permitting Ms. Loving to retrieve paperwork from the glove compartment, or looking at her phone which now also had proof of registration and insurance, McIntyre arrested Ms. Loving, including by physically seizing and handcuffing her.

32.  Had McIntyre included these facts in his affidavit of probable cause, it would have been apparent that there was an absence of probable cause for any of the charges.

<u>COUNT ONE</u>
42 U.S.C. § 1983
(Unreasonable Seizure; Malicious Prosecution)

33. Plaintiff repeats and realleges each and every allegation made above as if fully repeated herein.

---

[1] These are mental health disabilities.

34. McIntyre seized Ms. Loving and caused criminal proceedings to be initiated against Ms. Loving.

35. McIntyre caused such criminal proceedings to be initiated without probable cause.

36. McIntyre also caused such criminal proceedings to be prosecuted knowing of the absence of probable cause.

37. McIntyre initiated such criminal proceedings with malice or for an improper purpose.

38. The criminal proceedings terminated in favor of Ms. Loving.

39.  McIntyre's actions and inactions violated Ms. Loving's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

40. McIntyre's initiation of the criminal charges against Ms. Loving proximately caused her damage.

<u>COUNT TWO</u>
(Malicious Prosecution – State Law)

41. Plaintiff repeats and realleges each and every allegation made above as if fully repeated herein.

42. McIntyre caused criminal proceedings to be initiated against Ms. Loving.

43. McIntyre caused such criminal proceedings to be initiated without probable cause.

44. McIntyre also caused such criminal proceedings to be prosecuted knowing of the absence of probable cause.

45. McIntyre initiated such criminal proceedings with malice or for an improper purpose.

46. The criminal proceedings terminated in favor of Ms. Loving.

47. McIntyre's initiation of the criminal charges against Ms. Loving proximately caused her damage.

COUNT THREE
Ms. Loving v. the Township
(Americans with Disabilities Act)

48.     Ms. Loving repeats and realleges each and every allegation contained above as if fully repeated herein.

49.     Ms. Loving was disabled within the meaning of the Americans with Disabilities Act and the Rehabilitation Act because she has Bi-polar 1, depression and anxiety, which are mental health disabilities.

50.     Ms. Loving's Bi-polar 1, depression and anxiety limit a major life activity in that, among other things, she is unable to remain calm in tense situations or situations in which she believes she is being taken advantage of.

51.     Defendant McIntyre  was aware of Ms. Loving's disability.

52.      Upon information and belief, the Township failed to have a written policy or provide any training to its police officers regarding the ADA and RA or accommodation to persons with disabilities.

53.     The Township's failure to implement written policies and provide training to its officers, including McIntyre, was a cause of Ms. Loving's harm through the violations of her rights.

54.     Ms. Loving was denied benefits or discriminated against by the Township.

55.     The benefit Ms. Loving was denied by the Township was the lawful exercise of police power.

56.     Ms. Loving was denied this benefit by reason of her disabilities.

57.     Using the police power the Township granted to McIntyre, defendants wrongfully arrested and charged Ms. Loving with crimes because they failed to recognize that Ms. Loving's actions of pacing in the street were the result of her disabilities.

58.     Defendants should have accommodated Ms. Loving's disabilities by refraining from taking aggressive and confrontational action against her while she was experiencing the effects of her disabilities,

including a panic and anxiety attack which made it difficult for her to stay still.

59.     Because Defendants failed to reasonably accommodate Ms. Loving's disabilities, she suffered greater injury or indignity than other non-disabled individuals who are seized by police.

60.     As a result of the Township's violations of Ms. Loving's rights under the ADA, Ms. Loving suffered substantial injuries and damages.

COUNT FOUR
Ms. Loving v. the Township
(Rehabilitation Act)

61.     Ms. Loving repeats and realleges each and every allegation contained above as if fully repeated herein.

62.     The Township is an entity that receives federal funding.

63.     The Township's actions and inactions as described above violated the Rehabilitation Act.

64.     As a result of the Township's violation of the Rehabilitation Act, Ms. Loving suffered substantial injuries and damages.

WHEREFORE, Plaintiff demands judgment as follows:

A.  For Counts One and Two, an amount to be determined at trial, including punitive damages, plus interest;

10

B.   For Counts Three and Four, an amount to be determined at trial, plus interest;

C.   For Plaintiff's attorneys' fees pursuant to 42 U.S.C. §§ 1988, 12205 and 29 U.S.C. § 794a(b);

D.   For the costs and disbursements incurred in this action; and

E. For such other and further relief as the Court deems just and proper.

DYLLER & SOLOMON, LLC

/s/ Barry H. Dyller, Esq.
88 North Franklin Street
Wilkes-Barre, PA 18701
(570) 829-4860
Attorneys for Plaintiff

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues triable by a jury.